## J. A. WHITE, Respondent, v. W. C. BRICKEY, Appellant.

### Kansas City Court of Appeals, May 15, 1911.

NEGLIGENCE: Runaway Team: Broken Line: Appearances. Where a livery man was conveying persons to a fair being held at the grounds on the outskirts of a city, with a wagon and team, the latter known by him to be high spirited, provided with lines, one of which broke in the driver's efforts to hold them, whereby they ran away, and the passengers jumped out, one of them being injured; it was *held*, that the liveryman was liable. It was further *held*, that notwithstanding the passenger would not have been hurt if he had remained seated, yet, if the appearances of danger were such as that an ordinarily prudent and careful man in the same situation and circumstances would have jumped out, a recovery may be had.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond*, Judge.

AFFIRMED.

*W. H. Rothwell* and *E. W. Hinton* for appellant.

*J. L. Stephens* for respondent.

ELLISON, J.—Plaintiff was injured in jumping from a wagonette in which he was being conveyed by defendant from Columbia to the fair grounds at that place. Claiming that his jumping from the vehicle was caused by defendant's negligence, he brought this action for damages. The verdict in the trial court was

for the defendant; but on plaintiff's motion it was set aside and a new trial ordered. From such order defendant appealed.

There were several grounds stated in the motion for new trial, among others that the verdict was against the evidence and also against the law. No specific ground was assigned by the court for sustaining the motion. It appears that in July, 1908, a fair was being held at Columbia which was attended by large numbers of people. Many of these were conveyed from the city proper to the grounds by public conveyances drown by horses. The defendant was a livery man in the city and operated the conveyances involved in this controversy, consisting of a wagonette drawn by two horses driven by defendant's driver. The charges of negligence were: Dangerous and unruly horses, insufficient wagon, and weak and insecure harness. The evidence showed, without dispute, that plaintiff and several others took passage in the wagon; among them was a crippled man and at least one woman. And that the horses were spirited and hard to control on the way out to the fair grounds, and on getting inside the grounds they began to run away, when one of the lines broke under the effort of the driver to control them. Only one line remaining in service caused them to run in a circle. About this time someone (some witnesses thought it was the driver) said: "All pile out." There was excitement and all jumped out except the crippled man, who was found to be uninjured when the team was stopped by the crowd of people. Plaintiff was near the rear of the wagon and in getting upon the step in his attempt to get out, the speed and jerking of the team threw him to the ground, fracturing his arm and dislocating his shoulder and inflicting other injuries. The evidence further showed that the brake on the wagon was so out of order that it was of no service. It further showed that one of the horses had run away once before this occasion.

In our opinion the record amply justified the court in setting aside the verdict on the ground that it was against the evidence. There was nothing to show any excuse for the breaking of the line. One of the team was a horse and the other a mare, and defendant himself testified that: "She was prompt and always drove up on the bit, but there was nothing vicious about her and she never scared at anything. The horse was a little nervous, and a prompt driver, and I don't think it was safe to throw the lines down on him, but there was nothing vicious or ugly about him; he never had to be touched with the whip; he would shy at an automobile, but would go right on."

In addition to the amendment to instruction No. 3 for plaintiff, there should be added, after the word "danger," the words "or that appearances and circumstances were such that a reasonably prudent and careful man in the same situation would have believed there was danger."

The instructions given for defendant seem to be unobjectionable.

In order to avoid unjust conclusions by the jury, it would be well if an instruction were given to the effect that though the jury might believe that if plaintiff had remained seated in the wagon he would not have been injured, yet that fact, of itself, would not prevent his recovery, if his getting out was the act of an ordinary prudent and careful man in the same situation and circumstances.

The order granting a new trial is affirmed. All concur.